# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GREAT AMERICAN ASSURANCE COMPANY,** : | **CIVIL ACTION NO. 1:08-CV-0576** |
| : | |
| : | **(Judge Conner)** |
| **Plaintiff** : | |
| : | |
| v. : | |
| : | |
| **FRANCES FORD, MICHAEL E. FORD, DAKOTA LINES, INC., JOANNE F. SKINNER, PAUL KUGLAR, BETSY ANN KUGLAR, and KURT GRIGG,** : | |
| : | |
| **Defendants** : | |

## **MEMORANDUM**

This is an insurance declaratory judgment action filed by plaintiff Great American Assurance Company ("Great American"). Great American seeks a declaration that it owes no duty to defend or indemnify defendants Frances Ford, Michael E. Ford and Dakota Lines, Inc. in three underlying civil actions brought by Paul Kuglar and Betsy Ann Kuglar, (collectively "the Kuglars"), Joanne Skinner ("Skinner"), and Kurt Grigg ("Grigg"), all of whom are also defendants herein. Presently before the court is the Kuglars' motion for judgment on the pleadings (Doc. 22) and three motions for summary judgment filed by Skinner (Doc. 27), Grigg (Doc. 29), and Great American (Doc. 32). For the reasons that follow, Great American's motion for summary judgment (Doc. 32) will be granted, and the remaining motions will be denied.

I.  **Statement of Facts**[1]

On February 27, 2007, Michael Ford ("Ford") was operating a tractor-trailer loaded with cargo when he was involved in a multi-vehicle collision in which the Kuglars and Grigg sustained injury. (Doc. 1 ¶¶ 18-19, 25, 30; Doc. 43 ¶ 7-9.)[2] Tragically, James F. Skinner and John Michael Taylor were killed in the accident. (Doc. 1 ¶ 21; Doc. 43 ¶ 8.) Joanne Skinner is the administratrix of both decedents' estates. (Doc. 1 ¶ 20; Doc. 43 ¶ 8.) The Kuglars, Skinner, and Grigg each commenced separate actions[3] (hereinafter "the underlying actions"), all of which are presently before this court, alleging that the collision resulted in part from Ford's negligent operation of the tractor. (Doc. 1 ¶¶ 20-21, 24-25, 30-31; Doc. 43 ¶ 8 see also, Doc. 32, Exs. E, F, G.)

Ford and his wife, Frances Ford, jointly own the tractor, (Doc. 43 ¶ 2), which Ford was operating pursuant to an independent contractor agreement (hereinafter

---

[1] In light the applicable standards of review, the court will present the facts as alleged in the complaint for purposes of the Kuglars' motion for judgment on the pleadings and in the light most favorable to the non-moving party with respect to each motion for summary judgment. See infra Part II. This task is simplified because the instant matter involves only questions for legal determination and presents no disputes of fact.

[2] Docket Entry No. 43 is Great American's statement of material facts filed pursuant to Local Rule 56.1, to which none of the defendants filed a responsive statement fact statement. Defendants are therefore deemed to admit the facts set forth in Great American's statement. See L.R. 56.1. The defendants' motion papers confirm that they do not dispute the facts material to resolution of this matter.

[3] The court consolidated the actions of Skinner and the Kuglars into a single proceeding on May 14, 2008. (See Doc. 71 in Skinner v. Ford, No. 1:07-CV-1059 (M.D. Pa.)).

2

"the agreement") with Dakota Lines, Inc. ("Dakota") at the time of the collision. (Doc. 32, Ex. D; Doc. 43 ¶¶ 3-4.) Under the agreement, Dakota supplied liability insurance to cover accidents that occurred while Ford was transporting cargo on its behalf. (Doc. 1 ¶ 16; Doc. 32, Ex. D ¶ 6.) The agreement further required Ford to maintain non-trucking liability insurance to cover injuries that occurred when he was operating the tractor without a trailer in tow, a practice known in trucking parlance as "bobtailing." (Doc. 1 ¶ 17; Doc. 32, Ex. D ¶ 6.) Great American underwrote Ford's non-trucking liability policy (hereinafter "the NTL policy"), which was issued in Frances Ford's name and consists of a general liability insurance form along with the following endorsement:

<u>Truckers—Insurance for Non-Trucking Use</u>

\* \* \*

LIABILITY COVERAGE . . . is changed as follows:

1. The following exclusions are added:

    This insurance does not apply to:

    a. A covered auto while used to carry property in any business.

    b. A covered auto while used in the business of anyone to whom the auto is rented.

(Doc. 32, Ex. B at TE 2309.)[4]

---

[4] The policy issued by Great American is attached as Exhibit B to Docket Entry No. 32. Pinpoint citations to the policy refer to the identification numbers that appear in the lower lefthand corner of the various forms that comprise the policy.

3

Great American contends that it has no duty to defend or indemnity Ford in the underlying actions because this endorsement (hereinafter "the bobtailing endorsement") excludes coverage for collisions that occur while the tractor is hauling freight. Great American commenced the instant suit on July 28, 2008 to ascertain the extent of its obligations under the endorsement. Plaintiffs contend that the bobtailing endorsement was never incorporated into the terms of the NTL policy and that, in the absence of the endorsement, the policy covers the collision at issue in the underlying actions. They alternatively assert that the endorsement is ambiguous and that it must be interpreted to provide coverage for the collision. The parties have fully briefed these issues, which are now ripe for disposition.

## II. Standard of Review

The pending motions for judgment on the pleadings and for summary judgment implicate two distinct standards of review. However, because the instant matter involves solely questions of law, the court may perform its analysis under either standard. See Klecha v. Bear, 712 F. Supp. 44, 45-46 (M.D. Pa. 1989) (quoting Mellon Nat'l Bank & Trust Co. v. Nationwide Mut. Ins. Co., 32 F.R.D. 365, 356 (W.D. Pa. 1962) (noting that purely legal questions may be raised under either Rule 12 or Rule 56 of the Federal Rules of Civil Procedure).

### A. Judgment on the Pleadings

A motion for judgment on the pleadings is a procedural hybrid of a motion to dismiss and a motion for summary judgment. Rule 12(c) of the Federal Rules of Civil Procedure provides: "After the pleadings are closed but within such time as

not to delay the trial, any party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). To succeed on a motion under Rule 12(c), "the movant [must] clearly establish [ ] that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." Hayes v. Cmty. Gen. Osteopathic Hosp., 940 F.2d 54, 56 (3d Cir.1991); see also 5A CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1368, at 519 (2d ed.1990). When deciding a motion for judgment on the pleadings, the court is directed to view "the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." Hayes, 940 F.2d at 56.

### B. Summary Judgment

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact," and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(c). It places the burden on the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

5

## III.  Discussion

Great American filed the action *sub judice* to adjudicate its duties to defend and indemnify Ford and Dakota in the underlying actions. Defendants contend that the NTL policy covers the collision because the bobtailing endorsement is not a component of the NTL policy. They also assert that the endorsement is ambiguous and that the court must interpret the policy in favor of coverage.[5]

### A.  Incorporation of the Bobtailing Endorsement into the NTL Policy

An endorsement or contractual term constitutes a component of an insurance policy if the parties thereto mutually assent to be bound by it. See RESTATEMENT (SECOND) OF CONTRACTS § 17(1) & cmt. c (1981); see also Arnold Pontiac-GMC, Inc. v. Gen. Motors Corp., 786 F.2d 564, 572-73 (3d Cir. 1986). In the instant matter, the bobtailing endorsement appears on the Schedule of Forms and Endorsements, which identifies all addenda to the insurance policy. (Doc. 33, Ex. B at TE 8801.) The terms of the bobtailing endorsement explain that it "modifies insurance provided under the [NTL policy]." (Id. at TE 2309.) Frances Ford purchased the NTL policy (including the bobtailing endorsement) to satisfy her husband's obligations under the contractor agreement, which required him to

---

[5]The fatal collision at issue in the underlying actions occurred in Pennsylvania, but Great American issued the NTL policy to Ford in Texas. The involvement of multiple jurisdictions would ordinarily necessitate a choice-of-law analysis. However, the parties concede that both Pennsylvania law and Texas law produce the same outcome in this matter, rendering such an analysis unnecessary. See Huber v. Taylor, 469 F.3d 67, 74 (3d Cir. 2006); (Doc. 28 at 6 n.4; Doc. 30 at 3-4; Doc. 33 at 7-8.)

6

procure coverage for accidents that occurred when he was not hauling freight. (Doc. 1 ¶ 17; Doc. 32, Ex. D ¶ 6; Doc. 43 ¶¶ 1, 6.) Hence, both Francis Ford and Great American assented to the bobtailing endorsement, thereby incorporating it into the NTL policy.

### B. Coverage Provided by the Bobtailing Endorsement

Defendants argue that the terms of the endorsement supply coverage for the collision notwithstanding the purposes for which Francis Ford and Great American executed them. Interpretation of an insurance contract is a issue of law that must be addressed by the court. Initially, the court must determine whether the policy term is ambiguous. Loomer v. M.R.T. Flying Serv., Inc., 558 A.2d 103, 105 (Pa. Super. Ct. 1989). A term is ambiguous "if reasonably intelligent people could differ as to its meaning. Id.; see also Lucker Mfg. v. Home Ins. Co., 23 F.3d 808, 814 (3d Cir. 1994). The court must resolve ambiguities by giving effect to the interpretation most favorable to the insured, as the non-drafting party. J.C. Penney Life Ins. Co. v. Pilosi, 393 F.3d 356, 364 (3d Cir. 2004). However, "[w]here the terms of the insurance contract are not ambiguous, [the court] must read the policy in its entirety and give the words therein their plain and proper meanings." Loomer, 558 A.2d at 105; accord Lower Paxton Twp. v. U.S. Fid. & Guar. Co., 557 A.2d 393, 399 (Pa. Super. Ct. 1989).

In the instant matter, the bobtailing endorsement excludes coverage for liabilities that accrue while a "covered auto" is being "used to carry property in any business" or is being operated "in the business of anyone to whom the auto is

7

rented." (Doc. 33, Ex. B at TE 2309.) Defendants contend that the phases "in any business" or "in the business of" are ambiguous and that the court should therefore require Great American to provide coverage for the collision in the underlying actions. They further assert that the tractor was not "carrying" property at the time of the collision, rendering the bobtailing endorsement inapplicable. The court will address these issues *seriatim*.

### 1. "In Any Business" and "In the Business Of"

Defendants argue that the phrases "in any business" and "in the business of" are ambiguous. They are incorrect. This court previously addressed policy terms nearly identical to those presently at issue in Wenkosky v. Protective Insurance Co., 698 F. Supp. 1227 (M.D. Pa. 1988) (Nealon, J.). In Wenkosky, the operator of a tractor had delivered a load of cargo pursuant to a lease agreement with a motor carrier similar to the independent contractor agreement between Ford and Dakota. Id. at 1229. When returning home, he carried a load of logs as a favor for a personal acquaintance, who was engaged in the business of building log homes. Id. The acquaintance paid him $200 but had no relationship to the lease agreement with the carrier. Id. The operator was involved in an accident during this trip. Id. Like the bobtailing endorsement presently at issue, the operator's non-trucking liability policy excluded coverage for accidents that occurred "[w]hile the automobile or any trailer attached thereto *is used to carry property in any business*." Id. (emphasis added). The operator argued that the policy was ambiguous because it failed to specify whether the term "business" referred to all activities undertaken for

8

economic gain or was limited to activities performed under his agreement with the motor carrier. The court concluded that the policy was clear on its face. Id. at 1230-31, cited with approval in Canal Ins. Co. v. Underwriters at Lloyd's London, 435 F.3d 431, 436 (3d Cir. 2006). The operator had received economic remuneration for the trip and had transported the logs in furtherance of the acquaintance's economic interest. Such activities constituted "business," under the policy, placing the trip within the purview of the exclusion. Id. at 1232.

The instant matter presents a similarly compelling scenario for excluding coverage. At the time of the collision, Ford was transporting cargo on behalf of Dakota under the contractor agreement. He received compensation for his time and expenses, and the load was being delivered in furtherance of Dakota's shipping business. "[R]easonably intelligent people" would unanimously conclude that such activities constitute "business" under the bobtailing endorsement. Loomer, 558 A.2d at 105.[6]

---

[6]Defendants suggest that the bobtailing endorsement is susceptible to multiple interpretations because it could *either* apply solely to the act of hauling cargo for economic remuneration *or* include incidental travel necessary for the operator to arrive at or return from a job site. (Doc. 28 at 7.) Quibbling about the outer reaches of the bobtailing endorsement is unnecessary because the collision at issue plainly falls within the marrow of the endorsement. At the time of the accident, Ford was hauling cargo for economic remuneration in furtherance of Dakota's operational activities. Such activities clearly constitute business regardless of whether hypothetical liabilities accruing in transit between job sites implicate the endorsement.

## 2. "Carry[ing]" Property using a "Covered Auto"

Defendants also contend that the bobtailing endorsement restricts coverage only when a "covered auto" is "carrying" property at the time of a collision. They assert that the tractor—not the trailer attached thereto—is the only "covered auto" under the policy. The endorsement is purportedly inapplicable because Ford's cargo was located in the *trailer* (rather than within the confines of the *tractor*) at the time of the collision.

Defendants' proposed interpretation contorts the language of the contract beyond recognition. The bobtailing endorsement excludes coverage whenever a covered auto is carrying property. The policy defines "covered auto" as both the tractor owned by the insured and any trailers that are attached thereto but owned by third parties.[7] (See Doc. 32, Ex. B at TE 0001 ¶ I.A.7.) Ford was towing a trailer owned by Dakota at the time of the collision. Hence, the trailer is part of the "covered auto" to which the bobtailing endorsement applies.

Defendants' claim also fails because the tractor itself was carrying property within the meaning of the bobtailing endorsement. The Oxford English Dictionary defines "carry" as "to transport" or "to convey, originally by cart or wagon, hence in

---

[7]The declarations page of the policy defines the term "covered auto" by reference to a list standardized definitions that appear in the policy proper. (Doc. 33, Ex. B at TE 8010.) Ford's declarations page references the definition of "covered auto" located at Symbol 7 of the policy. (Id.) The definition appearing at Symbol 7 states that covered autos include "Only those 'autos' [appearing on the declarations page] for which a premium charge is shown (and for Liability Coverage *any "trailers" you don't own while attached to any power unit described [on the declarations page]*)." (Id. at TE 0001 ¶ I.A.7 (emphasis added)).

10

any vehicle, by ship, on horseback, etc." 2 OXFORD ENGLISH DICTIONARY 919 (2d Ed. 1989). Legal uses of the term demonstrate that the act of "carrying" refers to a range of activities performed to move objects through space either by attaching them to one's person or using a vehicle. Hence, common *carriers* are charged with the transportation of goods, see BLACKS LAW DICTIONARY 226 (8th ed. 2004), a railroad *carries* goods in interstate commerce, see, e.g., 49 U.S.C. § 10102(5) (defining a "rail *carrier*" as one who "provid[s] . . . railroad transportation for compensation" (emphasis added)), and drug traffickers *carry* firearms whenever they place them on their body or move them about using a vehicle, Muscarello v. United States, 524 U.S. 125, 131 (1998). The verb *to carry* extends to any conveyance effected by using a vehicle regardless of whether the object conveyed is physically located within the vehicle or within a container or device attached thereto. Accordingly, a tractor may "carry" cargo by hauling it in a trailer propelled using force supplied by the tractor's drive train. The court therefore concludes that Ford's tractor was "carrying" property at the time of the collision.

**IV. Conclusion**

The tractor covered by the NTL policy was carrying property in the course of business at the time of the collision at issue in the underlying actions. The bobtail endorsement therefore excludes coverage for the accident. Great American's motion for summary judgment will be granted, and the remaining motions will be denied.

An appropriate order is attached.

                                        S/ Christopher C. Conner
                                        CHRISTOPHER C. CONNER
                                        United States District Judge

Dated:        August 12, 2009

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GREAT AMERICAN ASSURANCE COMPANY,** | : | **CIVIL ACTION NO. 1:08-CV-0576** |
| | : | |
| | : | **(Judge Conner)** |
| **Plaintiff** | : | |
| | : | |
| v. | : | |
| | : | |
| **FRANCES FORD, MICHAEL E. FORD, DAKOTA LINES, INC., JOANNE F. SKINNER, PAUL KUGLAR, BETSY ANN KUGLAR,** and **KURT GRIGG,** | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| **Defendants** | : | |

## <u>ORDER</u>

AND NOW, this 12th day of August, 2009, upon consideration of the motion for judgment on the pleadings (Doc. 22) filed by defendants Paul Kuglar and Betsy Ann Kuglar, and of the motions for summary judgment filed by defendants Joanne F. Skinner (Doc. 27) and Kurt Grigg (Doc. 29) and by plaintiff Great American Assurance Company (Doc. 32), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motion for judgment on the pleadings (Doc. 22) filed by Paul Kuglar and Betsy Ann Kuglar is DENIED.

2. The motion for summary judgment (Doc. 27) filed by Joanne F. Skinner is DENIED.

3. The motion for summary judgment (Doc. 29) filed by Kurt Grigg is DENIED.

4. The motion for summary judgment (Doc. 32) filed by Great American Assurance Company is GRANTED.

5. The Clerk of Court is instructed to enter JUDGMENT in favor of plaintiff Great American Assurance Company and against defendants on all claims.

6. The Clerk of Court is instructed to CLOSE this case.

    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge